UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRAATZ, LLC, a Wisconsin Limited Liability Company, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:14-CV-4516-G |
| RED MANGO FC, LLC, a Texas Limited Liability Company, ET AL., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendants' motion to dismiss the plaintiffs' amended complaint (docket entry 19).  For the reasons discussed below, the defendants' motion is granted.

### I.  BACKGROUND

#### A.  Factual Background

From September 4, 2012 through March 2, 2014, Peter and Elizabeth Braatz (collectively, the "Braatzes") operated a Red Mango frozen yogurt franchise store through their company Braatz, LLC.  Amended Complaint ¶¶ 31-32 (docket entry 5).

The parties dispute whether the Red Mango franchisors, namely Red Mango FC, LLC, and Red Mango, Inc. (collectively, "Red Mango"), violated Wisconsin law during the contracting process with the Braatzes. See *id.* ¶¶ 33-40.

On November 4, 2011, the Braatzes received a franchise disclosure document ("FDD") which Red Mango sent to prospective franchisees. *Id.* ¶ 18. The FDD included an example of the franchise agreement that all franchisees must sign. *Id.* ¶ 19. The franchise agreement contained a mandatory franchisee questionnaire (the "questionnaire"). *Id.* After reviewing the documents contained in the FDD, the Braatzes decided to purchase a Red Mango franchise. *Id.* ¶ 20. Around December 28, 2011, Red Mango sent the Braatzes an official franchise agreement to sign. *Id.* The Braatzes returned a signed version of the franchise agreement (the "agreement"), along with a check, to Red Mango on January 5, 2012. *Id.* ¶ 26. Upon receipt of the agreement, a representative of Red Mango signed the document and cashed the Braatzes' check. *Id.*

However, sometime between January 6 and January 16, 2012, Red Mango mailed a blank copy of the aforementioned questionnaire to the Braatzes. *Id.* ¶ 27. Through a sticky note attached to this blank questionnaire, Red Mango indicated that the Braatzes should change their answers to questions twelve and thirteen. *Id.* The Braatzes initially answered "no" to these two questions:

> 12. Is it true no employee or other person speaking on our behalf made any statement or promise regarding the costs

>   involved in operating a RED MANGO Store franchise that is not contained in the Franchise Disclosure Document or that is contrary to, or different from, the information contained in the Franchise Disclosure Document?
>
>   13.  Is it true no employee or other person speaking on our behalf made any statement or promise regarding the actual, average or projected profits or earnings, the likelihood of success, the amount of money you may earn, or the total amount of revenue a RED MANGO Store franchise will generate, that is not contained in the Franchise Disclosure Document or that is contrary to, or different from, the information contained in the Franchise Disclosure Document?

*Id.* ¶ 24; *see also* Red Mango Franchise Agreement ("Franchise Agreement") at 49[1] (exhibit C, docket entry 5).  The Braatzes allege that prior to entering into the franchise agreement, Jeff Martin, a regional franchise director for Red Mango, "emailed Peter Braatz a business plan and financial projections for what he represented to be an established Red Mango franchise."  Amended Complaint ¶ 25.  Because Red Mango "**had** made statements regarding the actual, average or projected profits or earnings the Braatzes could expect, and based on the fact that the financial projections and business plan Mr. Martin sent were not contained in the FDD, the Braatzes answered Question Nos. 12 and 13 'no.'"  *Id.* ¶ 25 (emphasis in original).

After receiving the blank questionnaire, Peter Braatz contacted Red Mango. *Id.* ¶ 28.  A company representative informed him "that the Braatzes could not open a

---

[1]    Page numbers for the Franchise Agreement refer to ECF page numbers rather than the page numbers listed on the document.

Red Mango store without the Franchisee Questionnaire completed and resent to Red Mango in the form Red Mango required." *Id.* Thus, sometime before January 16, 2012, the Braatzes returned to Red Mango a questionnaire with questions twelve and thirteen answered "yes." *Id.* Red Mango then mailed the Braatzes a completed copy of the agreement that included the modified questionnaire. *Id.* ¶ 29.

Once the parties finalized the agreement, the Braatzes created Braatz, LLC, to operate their Red Mango franchise. *Id.* ¶ 31; *see also* Assignment & Assumption Agreement (exhibit D, docket entry 5). Financial struggles led to the franchise's closing on March 2, 2014 and, ultimately, to the Braatzes' declaration of bankruptcy. See *id.* ¶¶ 3, 32. The Braatzes, Helen M. Ludwig,[2] and Braatz, LLC (collectively, "the plaintiffs"), bring the present action against Red Mango and various officers, directors, and employees[3] of the business (collectively, "the defendants") for rescission of the franchise agreement and any other relief the court deems proper. See *id*.

B. Procedural Background

---

[2] Ludwig serves as the "Trustee for the Chapter 7 Bankruptcy Estate of Peter and Elizabeth Braatz." Amended Complaint ¶ 3.

[3] In addition to the two Red Mango business entities, the amended complaint names John F. Antioco, Barry M. Barron, Sr., Daniel J. Kim, Richard Jensrud, Miguel Foegal, Greg Kaloustian, Melitha Lynn Brown, Mandy Gribble, and Jeff Martin as defendants. Amended Complaint ¶¶ 6-14.

The plaintiffs filed their initial complaint on December 23, 2014 (docket entry 1). On January 2, 2015, they filed an amended complaint (docket entry 5). The defendants filed the instant motion to dismiss on February 13, 2015 (docket entry 19). The plaintiffs filed a timely response (docket entry 23), to which the defendants served a timely reply (docket entry 24). The motion is now ripe for consideration.

## II. ANALYSIS

The defendants contend that the court lacks jurisdiction because the plaintiffs fail the Article III standing test. Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("Motion to Dismiss") at 7-11 (docket entry 19). Specifically, they claim the plaintiffs lack an "injury in fact" and have not demonstrated that the alleged violation caused their injuries. *Id.* Moreover, even if the court possesses jurisdiction, the defendants aver, the plaintiffs have not sufficiently pled a "material" violation of section 553.27(4) of the Wisconsin Statutes. *Id.* at 15-18.

### A. Applicable Law

#### 1. *Rule 12(b)(6) Standard*

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re*

*Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of

relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

2. *Article III Standing*

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. CONST. art. III, § 2. Standing -- *i.e.*, the need to demonstrate that the plaintiff has a direct, personal stake in the outcome of the suit -- is an "essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560 (internal footnote and citations omitted).

With regard to the first of these elements, a legislature "can expand the range or scope of injuries that are cognizable for purposes of Article III standing by enacting statutes which create legal rights." *Hedlund v. Hooters of Houston*, Civil Action No. 2:08-CV-0045-J, 2008 WL 2065852, at *2 (N.D. Tex. May 13, 2008) (Robinson, J.) (internal quotation marks and citation omitted); see also *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . .") (internal quotation marks and citation omitted). As long as these statutory rights are "concrete and particularized," as opposed to "public rights that have been legislatively pronounced to belong to each individual who forms part of the public," *Lujan*, 504 U.S. at 560, 578, then "the invasion of [these rights] creates standing, even though no injury would exist without the statute." *Hedlund*, 2008 WL 2065852, at *2 (internal quotation marks and citation omitted). As for the final two

elements, "[w]hen the injury in fact is the violation of a statutory right . . ., causation and redressability will usually be satisfied." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 414 (9th Cir. 2014), *cert. granted* (April 27, 2015) (No. 13-1339). "First, there is little doubt that a defendant's alleged violation of a statutory provision 'caused' the violation of a right created by that provision." *Id.* Second, statutes generally create remedies "which redress the violation of statutory rights." *Id.* (citation omitted).

Lack of standing is a defect in subject matter jurisdiction. See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir.1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)); see also *Sommers Drug Stores Company Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)). A court must address any question concerning its power to hear a case, such as an inquiry into standing, as a "preliminary matter." *Xerox Corporation v. Genmoora Corporation*, 888 F.2d 345, 350 (5th Cir. 1989).

Defendants use Rule 12(b)(1) to raise a challenge to the court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1); see also *Reyes v. North Texas Tollway Authority*, 830 F. Supp. 2d 194, 201 (N.D. Tex. 2011) (Fish, J.). When analyzing a Rule 12(b)(1) motion, the court's "first consideration is the distinction between a 'facial

attack' and a 'factual attack' upon the complaint . . .." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Id.* In contrast, a defendant makes a "factual attack" by "submit[ting] affidavits, testimony, or other evidentiary materials." *Id.* In such a case, the "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.*

3. *Wisconsin Franchise Investment Law*

Chapter 553 of the Wisconsin Statutes governs the sale of franchises. *See* WIS. STAT. ch. 553. Pertinent to the present dispute, section 553.27(4) states:

> No franchise subject to registration under this chapter may be sold in this state unless a copy of an offering circular is provided to the prospective franchisee at least 14 days prior to the execution by the prospective franchisee of any binding franchise or other agreement with the franchisor or any affiliate of the franchisor or at least 14 days prior to the payment of any consideration to the franchisor or any affiliate of the franchisor, whichever first occurs.

If a franchisor violates this provision and "the violation was *material* in the franchisee's or subfranchisor's decision to purchase the franchise, [then the franchisor] shall be liable to the franchisee or subfranchisor, who may bring an action for rescission." WIS. STAT. § 553.51(1) (emphasis added).

The statute does not define the term "material."  See *id.* ch. 553.  Generally, "material" means "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential."  BLACK'S LAW DICTIONARY 1124 (10th ed. 2014).  Although the plaintiffs contend otherwise, *see* Plaintiffs' Brief in Opposition to Motion to Dismiss Amended Complaint ("Plaintiffs' Brief") at 16-19 (docket entry 23), the statutory text instructs the court to assess the "materiality" requirement by examining the Braatzes' actions specifically, not the hypothetical actions of an objectively reasonable person.  *See* WIS. STAT. 553.51(1) (noting that the violation must be "material in *the franchisee's or subfranchisor's decision* to purchase the franchise") (emphasis added).

A franchisee successful in its action for rescission is "financially restored to [its] presale position" by the franchisor.  *Hiltpold v. T-Shirts Plus, Inc.*, 98 Wis. 2d 711, 714 (Wis. Ct. App. 1980).  When the liable franchisor is a corporate entity, "every principal executive officer or director of [the] corporation . . . and every employee of [the corporation] who materially aids in the act or transaction constituting the violation is also liable jointly and severally with and to the same extent as" the corporation.  WIS. STAT. § 553.51(3).

B. <u>Application</u>

1. *The Plaintiffs Possess Standing to Bring Their Claim*

Section 553.27(4) of the Wisconsin Statutes creates a legal right that when violated can establish an "injury in fact" necessary for Article III standing. See *Warth*, 422 U.S. at 500. If the defendants violated section 553.27(4) and "the violation was material in the [Braatzes'] decision to purchase the franchise," WIS. STAT. § 553.51(1), then the plaintiffs suffered a "concrete and particularized" statutory injury. *Lujan*, 504 U.S. at 560. The injury in this case is not only traceable to the defendants' conduct, but is one and the same (*i.e.*, the defendants' relevant conduct is an alleged violation of section 553.27(4) and this violation alone can establish an injury for standing purposes). Finally, the injury would be "redressed by a favorable decision" because the plaintiffs would be able to rescind the contract, as specified in the statute. WIS. STAT. § 553.51(1); *Lujan*, 504 U.S. at 560 (citation omitted). With the three elements of standing satisfied, the court proceeds to analyze whether the plaintiffs have pled a plausible claim for relief.

2. *The Plaintiffs Have Not Plausibly Pled a*
*Material Violation of § 553.27(4)*

Even assuming that section 553.27(4) required the defendants to provide the Braatzes an additional fourteen days before submitting the revised questionnaire, the plaintiffs have failed to demonstrate that the alleged violation was "material," as required by section 553.51(1). The Braatzes' actions upon receipt of the blank

questionnaire demonstrate the immateriality of the alleged violation. After a Red Mango representative informed the Braatzes that they must change their answers to questions twelve and thirteen, the Braatzes promptly resubmitted the questionnaire in the required form. Amended Complaint ¶ 28. The Braatzes also submitted another check, which Red Mango cashed on January 20, 2012, to "cover the second part of Red Mango's mandated development fee." *Id.* ¶ 30. With the appropriate paperwork completed and necessary fees processed, the Braatzes "[a]lmost immediately . . . created plaintiff Braatz LLC for the purpose of operating their franchised business." *Id.* ¶ 31. These actions demonstrate that Red Mango's request did not "affect [the Braatzes'] decision-making" in the least, and thus was not material. *See* BLACK'S LAW DICTIONARY 1124.

Moreover, the agreement between the parties already included representation 16.2.3, which states:

> Except for representations contained in Mango's Franchise Disclosure Document provided to you in conjunction with this franchise offering, you represent that neither Mango nor its agents or representations [sic] have made any representations, and you have not relied on representations made by Mango or its agents or representatives, concerning actual or potential gross revenues, expenses or profit of a RED MANGO Store.

Franchise Agreement at 31. This representation covers the substance of questions twelve and thirteen.[4] The Braatzes admit that Red Mango provided them with over fourteen days to consider representation 16.2.3, to which the Braatzes agreed. *See* Amended Complaint ¶¶ 18-22. To ensure consistency between the agreement and questionnaire, a franchisee who agreed to representation 16.2.3 would also have to answer questions twelve and thirteen "yes." *Compare* Franchise Agreement at 31, *with* Franchise Agreement at 49. Thus, Red Mango's request that the Braatzes change their answers to questions twelve and thirteen did not present any new requirements for franchise ownership. In these circumstances, Red Mango's failure to provide the Braatzes with fourteen days to consider its request cannot be a "material" violation of section 553.27(4).

The plaintiffs dispute this analysis by arguing that "the subject matter of the Questionnaire is broader than the coverage of Paragraph 16.2.3." Plaintiffs' Brief at 20. Specifically, they contend that question thirteen's references to "the likelihood of success" of a franchise store, the "amount of money" a franchisee will earn, and "average or projected profits or earnings" are absent from representation 16.2.3. Plaintiffs' Brief at 20. Despite these absences, representation 16.2.3 still covers all

---

[4] For the text of questions twelve and thirteen see *supra* at 2-3. The plaintiffs concede that "Question 12 addresses 'costs involved in operating a RED MANGO Store,' a subject covered by Paragraph 16.2.3 . . .." Plaintiffs' Brief at 20. However, the plaintiffs claim that representation 16.2.3 does not cover certain aspects of question thirteen. *Id.* The court addresses this contention below.

content addressed in question thirteen.  A franchisor's statement concerning "the likelihood of success" is one and the same as a statement regarding the likely "amount of money" a franchisee will earn.  Such a statement and a franchisor's discussion of "average or projected profits or earnings" are "representations . . . concerning actual or potential gross revenues, expenses or profit" of a franchise store -- a category of statements covered by representation 16.2.3.  Red Mango Franchise Agreement at 31.

Finally, the plaintiffs aver that they "have pled the violation was material" and "that is all that is required."  Plaintiffs' Brief at 17.  However, the court is not required to accept "[t]hreadbare recitals of the elements of a cause of action" as true.  *Iqbal*, 556 U.S. at 678.  In this case, the court finds the plaintiffs' bare pleading of the "materiality" requirement insufficient because, as detailed above, the factual allegations contained in the complaint and the Braatzes' agreement to representation 16.2.3 demonstrate the immateriality of any violation.  See *id.* at 679 (noting that courts must draw on "judicial experience and common sense" when applying the Rule 12(b)(6) standard).  In other words, "the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id.* (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).

### III.  CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss the amended complaint is **GRANTED**.  The plainataiffs shall have leave to file and serve

content addressed in question thirteen.  A franchisor's statement concerning "the likelihood of success" is one and the same as a statement regarding the likely "amount of money" a franchisee will earn.  Such a statement and a franchisor's discussion of "average or projected profits or earnings" are "representations . . . concerning actual or potential gross revenues, expenses or profit" of a franchise store -- a category of statements covered by representation 16.2.3.  Red Mango Franchise Agreement at 31.

Finally, the plaintiffs aver that they "have pled the violation was material" and "that is all that is required."  Plaintiffs' Brief at 17.  However, the court is not required to accept "[t]hreadbare recitals of the elements of a cause of action" as true.  *Iqbal*, 556 U.S. at 678.  In this case, the court finds the plaintiffs' bare pleading of the "materiality" requirement insufficient because, as detailed above, the factual allegations contained in the complaint and the Braatzes' agreement to representation 16.2.3 demonstrate the immateriality of any violation.  See *id.* at 679 (noting that courts must draw on "judicial experience and common sense" when applying the Rule 12(b)(6) standard).  In other words, "the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id.* (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).

### III.  CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss the amended complaint is **GRANTED**.  The plainataiffs shall have leave to file and serve

a second amended complaint to cure, if they can, the deficiencies noted above.  If a second amended complaint is not filed and served by **May 8, 2015**, the court will dismiss this action with prejudice.

    **SO ORDERED**.

April 27, 2015.

                                      _/s/ A. Joe Fish_
                                      **A. JOE FISH**
                                      **Senior United States District Judge**